# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

------------------------------------------------------------X

MARY CONNER, Individually and as the
representative of a class of similarly situated persons,

                                   Case No. 3:26-cv-400

                Plaintiff,

          - against -

BILLY GRAHAM EVANGELISTIC
ASSOCIATION,

                Defendants.

------------------------------------------------------------X


## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff, Mary Conner ("Plaintiff" or "Conner"), brings this action on behalf of herself and all other persons similarly situated against Billy Graham Evangelistic Association (hereinafter "Billy Graham" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report.

1

4. Plaintiff brings this civil rights action against Billy Graham for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Billy Graham provides to their non-disabled customers through www.Bookstore.BillyGraham.org (hereinafter "Bookstore.BillyGraham.org" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Bookstore.BillyGraham.org provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Billy Graham. Yet, Bookstore.BillyGraham.org contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Billy Graham excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendant's website and from purchasing goods or services from Defendant's website.

2

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. Billy Graham's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Bookstore.BillyGraham.org.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

10. Plaintiff is Christian, and lately she has been exploring Evangelism by listening to media released by Billy Graham, who she agrees with and whose organization she wants to support. As such, Plaintiff browsed and intended to make an online purchase of the 'Just As I Am' T-shirt for herself and the 'Pumpkin Patch Parable' book for her grandchildren on Bookstore.BillyGraham.org. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on Bookstore.BillyGraham.org.

11. Because Defendant's website, Bookstore.BillyGraham.org, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Billy Graham's policies, practices, and procedures to that Defendant's website will become and remain accessible to blind and visually-impaired

3

consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under State Law.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant is registered to do business in the State of North Carolina and has been conducting business in North Carolina, including in this District. Defendant maintains a brick-and-mortar place of public accommodation in this District which is subject to personal jurisdiction in this District. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

16. Plaintiff, is and has been at all relevant times a resident of Mecklenburg County,

4

State of North Carolina.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Mary Conner, cannot use a computer without the assistance of screen reader software.  Plaintiff, Mary Conner, has been denied the full enjoyment of the facilities, goods and services of Bookstore.BillyGraham.org, as well as to the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Bookstore.BillyGraham.org.

18. Defendant, Billy Graham Evangelistic Association, is a North Carolina domestic non-profit organization with its principal place of business located at 1 Billy Graham Parkway, Charlotte, NC 28201.

19. Defendant owns and operates Ruth's Attic Bookstore (hereinafter, "Ruth's Attic Bookstore" or "Bookstore"), which is a place of public accommodation.  Billy Graham maintains a physical Ruth's Attic Bookstore location in Charlotte.

20. Ruth's Attic Bookstore provides to the public important and enjoyable goods and services such as special events and exhibits, volunteering services and opportunities, and educational resources as well as a wide range of Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, and apparel amongst the many items offered for sale.  Defendant also provides to the public a website known as Bookstore.BillyGraham.org which provides consumers with access to an array of goods and services offered to the public by Ruth's Attic Bookstore, including, the ability to learn about and receive Billy Graham Library services at Ruth's Attic Bookstore, the ability to learn about the Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, and apparel sold at Ruth's Attic Bookstore, and the ability to make online purchases, all with the click of a mouse. The Website also lets the visitor learn

5

about promotions, learn about Billy Graham, and learn about information regarding 'Ruth's Attic Bookstore' locations, including times of operation, among other features. The inaccessibility of Bookstore.BillyGraham.org has deterred Plaintiff from making an online purchase of the 'Just As I Am' T-shirt for herself and the 'Pumpkin Patch Parable' book for her grandchildren.

21. Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's website is a service, privilege, or advantage that is heavily integrated with Defendant's physical Ruth's Attic Bookstore location and operates as a gateway thereto.

## NATURE OF THE CASE

22. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

23. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

24. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

25. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise

6

known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

26. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

**FACTUAL ALLEGATIONS**

27. Defendant operates Ruth's Attic Bookstore in North Carolina and provides Billy Graham Library services and Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, and apparel for sale, amongst other products and services.

28. Bookstore.BillyGraham.org is a service and benefit offered by Billy Graham in North Carolina and throughout the United States. Bookstore.BillyGraham.org is owned, controlled and/or operated by Billy Graham Evangelistic Association.

7

29. Bookstore.BillyGraham.org is a commercial website that offers products and services for online sale that are available in Ruth's Attic Bookstore. The online shop allows users to browse and learn about the products and services provided at Ruth's Attic Bookstore, including learning about and attending different types of special events and exhibits, volunteering services and opportunities, and educational resources, and learning about and browsing a wide selection of Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, and apparel offered for sale, make purchases, and perform a variety of other functions.

30. Among the features offered by Bookstore.BillyGraham.org are the following:

(a) learning about Ruth's Attic Bookstore information including allowing persons who wish to visit the Bookstore to learn its location, hours of operation, and phone numbers;

(b) an online Ruth's Attic Bookstore, allowing customers to learn about and purchase Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, apparel and related products for delivery to their doorstep; and

(c) learning about the company, learning about shipping and return policies, learning about career opportunities, and learning about promotions.

31. This case arises out of Billy Graham's policy and practice of denying the blind access to Bookstore.BillyGraham.org, including the goods and services offered by Billy Graham through Bookstore.BillyGraham.org. Due to Billy Graham's failure and refusal to remove access barriers to Bookstore.BillyGraham.org, blind individuals have been and are being denied equal access to Billy Graham, as well as to the numerous goods, services and benefits offered to the public through Bookstore.BillyGraham.org.

32. Billy Graham denies the blind access to goods, services and information made available through Bookstore.BillyGraham.org by preventing them from freely navigating Bookstore.BillyGraham.org.

8

33. Bookstore.BillyGraham.org contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

34. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Bookstore.BillyGraham.org that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Bookstore.BillyGraham.org customers are unable to determine what is on the website, browse the website or investigate Billy Graham's web pages and/or make purchases.

35. Bookstore.BillyGraham.org also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as Bookstore.BillyGraham.org, these forms include search fields to locate products, search fields used to size and quantity, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's products, nor can they enter their personal identification and financial information with confidence and security.

9

36. Specifically, when Plaintiff, using JAWS, attempted to make a purchase, she encountered the following problems:

**NAVIGATION:**

There is **NO** functional "Skip to Content" link. No "Skip to Content" link exists on the website. Plaintiff was **UNABLE** to bypass repeated blocks of header and navigation content and was **FORCED** to navigate through all header and navigation links on every page. Consequently, accessing individual products was virtually impossible and at best, significantly time-consuming and burdensome.

Submenus are **NOT** accessible with the keyboard; mouse hover is required. The "Books", "Evangelism", and "More Products" navigation links expand to reveal submenus with additional links and content but the submenus **CANNOT** be opened or accessed with keyboard controls. Plaintiff was **UNABLE** to access any submenu content or use the navigation menu as intended. This is a critical error which prevented Plaintiff from accessing a majority of the products sold on the website.

Navigation links with submenus are **NOT** announced as "collapsed" or "expanded." The "Books", "Evangelism", and "More Products" navigation links do **NOT** announce their collapsed state or indicate that they expand to reveal submenus. Plaintiff was **UNAWARE** submenus existed or that any additional navigation content was available.

The "Search" feature is **NOT** accessible for screen readers. When Plaintiff began typing into the search field, suggestions populated below but **NO** instruction was provided that suggestions will appear or how to interact with them. **NO** announcement was provided that content has been updated. Plaintiff was **UNAWARE** suggestions had become available and was **UNABLE** to use the search feature.

Text and buttons in the announcement region are **NOT** accessible. The "Receive Special Offers & Savings" link does **NOT** receive keyboard focus and **CANNOT** be interacted with using keyboard controls. Plaintiff was **UNAWARE** this option was available and was **UNABLE** to access it.

Product card controls are **NOT** labeled or accessible on collection pages. Product cards include "Add to Wishlist" buttons that are announced **WITHOUT** referencing the associated product name. When multiple products appear on the page, all wishlist buttons announce identically and Plaintiff was **UNABLE** to determine which button corresponded to which product. Additionally, each product card includes an "Add to Cart" button that does **NOT** receive keyboard focus and **CANNOT** be activated with keyboard controls. Plaintiff was **UNABLE** to use the quick add to cart feature.

Carousel graphic links are **NOT** labeled or are **NOT** accessible. Carousel previous and next slide controls are announced as "blank" **WITHOUT** any context about their purpose or that they navigate between carousel slides. Additionally, **NO** indication is provided to screen readers that they are within a carousel region. Plaintiff was **UNAWARE** the controls were carousel navigation buttons and was **UNABLE** to determine their purpose.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

Thumbnail image galleries are **NOT** accessible on product pages. Gallery controls are announced as "Previous button", "Just As I Am T-Shirt graphic", "Next button", and multiple "Just As I Am T-Shirt button" announcements in succession **WITHOUT** any context about the purpose or functionality of any of these controls. Plaintiff was **UNAWARE** she was navigating a gallery viewer, that the "Previous" and "Next" buttons were slide controls, or that the repeated "Just As I Am T-Shirt button" announcements were individual gallery thumbnail controls.

The "Quantity' spin box is **NOT** labeled. Quantity spin buttons on the "Just As I Am T-Shirt" product page are **NOT** associated with the size they control. A separate quantity spin button exists for each size — Small through XXXLarge — but none of the controls reference the associated size. Plaintiff was **UNABLE** to determine which quantity control corresponded to which size.

The "plus" and "minus" buttons for adjusting quantity are **INCORRECTLY** labeled. Increase and decrease quantity buttons are announced as "void 0 link" **WITHOUT** any context that these are quantity controls. On the "Just As I Am T-Shirt" product page, separate quantity controls exist for each size — Small through XXXLarge — but none of the controls are labeled or associated with the corresponding size. Plaintiff was **UNABLE** to determine the purpose of the controls or which size each control was adjusting.

There is **NO** verbal notification given when quantity is adjusted with the "plus" or "minus" buttons. When quantity is adjusted using the increase or decrease controls, **NO** announcement is provided to confirm the updated value or that any action took place. Plaintiff was **UNABLE** to determine if the quantity adjustment was successful or what the current quantity was.

The Wishlist and compare links are **NOT** labeled meaningfully on product pages. The wishlist and compare links adjacent to the "Add to Cart" button are both announced as "same page link" **WITHOUT** any label or context about their purpose or destination. Plaintiff was **UNAWARE** a Wishlist or product compare feature was available and was **UNABLE** to use either feature as intended.

**ADDING TO CART/NAVIGATING THE CART:**

Product names are **NOT** announced as users navigate through cart controls. Cart controls are announced as "Qty: spin button editable selected 1" and "link Remove" **WITHOUT** any reference to the associated product name. When multiple products are in the cart, all controls announce identically and Plaintiff was **UNABLE** to determine which control corresponded to which product.

**CHECKOUT PROCESS:**

Checkout form fields are **NOT** labeled for screen readers. The email address field on the checkout page is announced as "edit blank" **WITHOUT** any label or context about what information is required. Plaintiff was **UNABLE** to determine what to enter into the field and was **UNABLE** to complete the checkout form.

Error notifications are **NOT** announced on the checkout page. When the checkout form

11

is submitted with errors, field-level error messages read "This is a required field" **WITHOUT** identifying what the field is for. Because the email field is also unlabeled, Plaintiff still could **NOT** determine what input was required. On the payment method form, a visual error message of "Invalid card number or expiration date" appears after submission but **NO** announcement is provided. Plaintiff was **UNABLE** to determine if the order was placed, if an error occurred, or what action was required to correct it.

Shipping method options are **NOT** accessible for screen readers. The shipping methods section is defined as a table, but radio buttons within the table are announced as "FedEx Ground, max 4 estimated transit days, United Parcel Service radio button not checked 1 of 1" even though 5 radio button options exist, which is misleading. The price associated with each shipping option is **NOT** announced with the radio button and **CANNOT** be accessed while focused on the radio button, as radio button inputs override standard table navigation controls. Plaintiff was **UNABLE** to determine the total number of shipping options, read the associated prices, or accurately evaluate the available shipping methods.

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

37. On Bookstore.BillyGraham.org, blind customers are not aware if the desired products have been added to the shopping cart because the screen-reader does not indicate the type of product or quantity. Therefore, blind customers are essentially prevented from purchasing any products on Bookstore.BillyGraham.org.

38. Furthermore, Bookstore.BillyGraham.org lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow Plaintiff to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on Bookstore.BillyGraham.org's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a booking and purchase, she was unable to access it completely.

39. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through Bookstore.BillyGraham.org even more time consuming and confusing for Plaintiff and blind consumers.

40. Bookstore.BillyGraham.org requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for Plaintiff to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, Bookstore.BillyGraham.org's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases and bookings on Bookstore.BillyGraham.org.

41. Due to Bookstore.BillyGraham.org's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at Ruth's Attic Bookstore. Some blind customers may require a driver to get to Ruth's Attic Bookstore or require assistance in navigating Ruth's Attic Bookstore. Unfortunately, Plaintiff could not even locate a Ruth's Attic Bookstore location on the website. By contrast, if Bookstore.BillyGraham.org were accessible, a blind person could independently investigate products and programs and make purchases and/or reservations via the Internet as sighted individuals can and do. According to WCAG 2.0 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, Bookstore.BillyGraham.org's

13

inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on Bookstore.BillyGraham.org.

42. Bookstore.BillyGraham.org thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Bookstore.BillyGraham.org and who would otherwise be able to fully and equally enjoy the benefits and services of Ruth's Attic Bookstore in North Carolina and throughout the United States.

43. Plaintiff, Mary Conner, has made numerous attempts to make purchases on Bookstore.BillyGraham.org, most recently on April 13, 2026, April 24, 2026, and May 1, 2026, but was unable to do so independently because of the many access barriers on Defendant's website.  These access barriers have caused Bookstore.BillyGraham.org to be inaccessible to, and not independently usable by, blind and visually-impaired persons.  Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the 'Just As I Am' t-shirt for herself and the 'Pumpkin Patch Parable' book for her grandchildren.

44. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to make additional purchases of Evangelical books, DVDs, CDs, unique gifts, collectibles, home decor, and apparel for delivery to her doorstep. Plaintiff grew up as a non-denominational Christian. She went to church for Christian holidays, celebrated Easter and Christmas, and even wore a cross for some time. After moving to North Carolina a few years ago, Plaintiff has been learning to more deeply engage with her faith. Specifically, she has been exploring Evangelism, and she wants to show her support for that denomination by wearing clothes that show her faith and by making purchases that go toward Evangelist movements. However, supporting Evangelist organizations by shopping in physical stores can be a significant challenge for Plaintiff, as a blind person. Getting herself to a store, navigating around aisles with other patrons, and finally selecting the right

14

items are time-consuming and burdensome tasks for Plaintiff. Because of this, Plaintiff prefers to shop online. Like most blind people, Plaintiff relies on social media for product recommendations. While browsing online, Plaintiff came across Defendant's organization and their store. She has listened to Billy Graham and agrees with his teachings and perspectives on the Evangelical faith, so she was excited to find more resources and support Defendant's organization by purchasing goods from them. Plaintiff loved that Defendant's bookstore sells media that spreads the lessons and teachings of Jesus Christ from an Evangelical perspective. She is especially fond of the fact that many of their books are designed for children, as she has grandchildren and she wants them to grow up having a relationship with Jesus Christ. Plaintiff also loved that Defendant's apparel allows her to outwardly display her support for her faith in a fashionable way, as Defendant's apparel is minimalist and comes in a range of colors and sizes that fit in her current wardrobe. As such, Plaintiff was eager to make purchases on Defendant's website. Unfortunately, the Website is not accessible to the blind and Plaintiff was deterred from making online purchases. If the Website were accessible to the blind, Plaintiff will be able to visit Defendant's website and purchase additional Evangelical media, apparel, and related products without the need to visit the physical location and avoid all the challenges that Plaintiff and other blind people face when venturing out of their homes. Defendant has bought similar items from other (accessible) online vendors in the past. However, Plaintiff wants to specifically support the Billy Graham Evangelistic Association by purchasing goods from the Website because she agrees with Billy Graham's teachings, and she is particularly interested in purchasing from their curated book selection and their line of uniquely designed apparel. Plaintiff also thinks that Defendant's products would make for good gift ideas for her grandchildren and wishes to periodically purchase books from their current selection of books, as well as books and other goods Defendant releases on the Website in the future as they are

15

released. Consequently, Plaintiff would like to visit the Website on a regular basis in the future, if the website becomes accessible to blind people. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during April and May 2026 without success and will definitely make purchases of items, including the new items which are regularly added and sold on the website and which currently cannot be purchased by blind persons.

45. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, Bookstore.BillyGraham.org, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

46. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Bookstore.BillyGraham.org and Ruth's Attic Bookstore.

47. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

16

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

48. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

49. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Bookstore.BillyGraham.org and Ruth's Attic Bookstore, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

## CLASS ACTION ALLEGATIONS

50. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Bookstore.BillyGraham.org and as a result have been denied access to the enjoyment of goods and services offered by Billy Graham, during the relevant statutory period."

51. Plaintiff seeks certification of the following North Carolina subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in the State of North Carolina who have attempted to access Bookstore.BillyGraham.org and as a result have been denied access to the enjoyment of goods and services offered by Billy Graham, during the relevant statutory period."

17

52. There are thousands of visually-impaired persons in North Carolina. There are approximately 8.1 million people in the United States who are visually-impaired. *Id.* Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

53. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Bookstore.BillyGraham.org and Billy Graham. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and Bookstore on Bookstore.BillyGraham.org and by extension the goods and services offered through Defendant's website to Billy Graham.

54. There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether Bookstore.BillyGraham.org is a "public accommodation" under the ADA;

(b) Whether Bookstore.BillyGraham.org is a "place or provider of public accommodation" under the laws of North Carolina;

(c) Whether Defendant, through its website, Bookstore.BillyGraham.org, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d) Whether Defendant, through its website, Bookstore.BillyGraham.org, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of North Carolina.

55. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Billy Graham

18

has violated the ADA, and/or the laws of North Carolina by failing to update or remove access barriers on their website, Bookstore.BillyGraham.org, so it can be independently accessible to the class of people who are legally blind.

56. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

57. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

58. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

59. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION
(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

60. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 59 of this Complaint as though set forth at length herein.

19

61. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

62. The Ruth's Attic Bookstore located in North Carolina is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(H). Bookstore.BillyGraham.org is a service, privilege or advantage of Billy Graham. Bookstore.BillyGraham.org is a service that is by and integrated with Ruth's Attic Bookstore.

63. Defendant is subject to Title III of the ADA because it owns and operates Ruth's Attic Bookstore.

64. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

65. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

66. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to

20

afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

67. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

68. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

69. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the regulations promulgated thereunder. Patrons of Billy Graham who are blind have been denied full and equal access to Bookstore.BillyGraham.org, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

70. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

21

71. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Bookstore.BillyGraham.org and Billy Graham in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

72. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

73. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

<u>**SECOND CAUSE OF ACTION**</u>
(Declaratory Relief)

76. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint as though set forth at length herein.

77. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Bookstore.BillyGraham.org contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Bookstore.BillyGraham.org and by extension Billy Graham, which Billy Graham owns, operates and/or controls, fails to comply with applicable

22

laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., prohibiting discrimination against the blind.

78. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Bookstore.BillyGraham.org, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Bookstore.BillyGraham.org is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Bookstore.BillyGraham.org, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under Federal and State laws;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

23

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

This is the 21st day of May 2026

LAW OFFICES OF SANJAY R. GOHIL, PLLC

By: /s/ *Sanjay R. Gohil*_____
      Sanjay R. Gohil
      NC State Bar No. 24250
      2435 Plantation Center Drive, Suite 200
      Matthews, NC 28105
      Telephone: (704) 814-0729
      Facsimile: (704) 814-0730
      E-mail: srg@gohillaw.com

- And -

SHAKED LAW GROUP, P.C.

By:*/s/Dan Shaked*_____
    Dan Shaked, Esq.
    14 Harwood Court, Suite 415
    Scarsdale, NY 10583
    Tel. (917) 373-9128
    e-mail: ShakedLawGroup@Gmail.com
    Counsel for Plaintiff

24